1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2

 3    ------------------------------X
      UNITED STATES OF AMERICA,
 4                              :   CR-02-1188
                                    (JS)
 5         -against-           :   United States Courthouse
                                    Central Islip, New York
 6    DAGOBERTO FLOREZ RIOS,
                                :   October 20, 2009
 7                Defendant.        11 a.m.
      ------------------------------X
 8
                        TRANSCRIPT OF SENTENCING
 9                      BEFORE THE HONORABLE JOANNA SEYBERT
                        UNITED STATES DISTRICT COURT JUDGE
10

11    APPEARANCES:

12    For the Government:      BENTON J. CAMPBELL, ESQ.
                               UNITED STATES ATTORNEY
13                                BY: BONNIE KLAPPER, AUSA
                               One Pierrepont Plaza
14                             Brooklyn, New York 11201

15

16    For the Defendant:      DAVID WIKSTROM, ESQ.

17

18

19

20
      Official Court Reporter:   Paul J. Lombardi, RMR, FCRR
21    Ph. (631) 712-6106          100 Federal Plaza - Suite 1180
      Fax (631) 712-6122          Central Islip, New York 11722
22

23

24
                   Proceedings recorded by mechanical stenography.
25                      Transcript produced by CAT.
```

1           THE CLERK:  For sentencing United States v Rios.

2    Your appearances, please.

3           MS. KLAPPER:  Good morning, your Honor.

4           Bonnie Klapper for the United States.

5           THE COURT:  Good morning, Ms. Klapper.

6           MR. WIKSTROM:  David Wikstrom for Mr. Rios.

7           Good morning, your Honor.

8           THE COURT:  Good morning, Mr. Wikstrom.

9           Is the defendant ready for sentence?

10          MR. WIKSTROM:  He is, your Honor.

11          THE COURT:  If he would rise, we'll have him

12   sworn in.

13          We have the interpreter who has previously taken

14   an affirmation.

15          (Defendant sworn.)

16

17          THE COURT:  You have been sworn in, sir.  That

18   means you must tell the truth.

19          If you don't tell the truth, you will be charged

20   with perjury and face additional jail time.

21          Do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  If at any time you don't understand

24   something I'm saying, or you want to speak to your

25   attorney let me know and I'll give you that opportunity.

1    You can speak with him in private.

2              All right?

3              THE DEFENDANT:  Sure.

4              THE COURT:  I'm going to ask you a series of

5    questions to see if you understand all these proceedings

6    and all of your rights.

7              Do you understand?

8              THE DEFENDANT:  I do.

9              THE COURT:  Prior to coming to court today, have

10   you had any drugs, alcohol, medication of any kind?

11             THE DEFENDANT:  No.

12             THE COURT:  I noted in your probation report

13   that you do take medication for blood pressure.

14             THE DEFENDANT:  Yes, for blood pressure.

15             THE COURT:  Did you have that today?

16             THE DEFENDANT:  No.

17             THE COURT:  Does that affect your ability to

18   understand these proceedings?

19             THE DEFENDANT:  No.  No.

20             Not at all.

21             THE COURT:  Is there some reason why you didn't

22   take it today?

23             THE DEFENDANT:  Because it took me out very

24   early in the morning and it was going to affect my

25   stomach.

4

1          THE COURT:  All right.

2          Can you tell me are you satisfied with the

3    services of your attorney?

4          THE DEFENDANT:  I'm very satisfied with the

5    services.

6          THE COURT:  Good.

7          And Mr. Wikstrom has advised you and shown you

8    the presentence investigation report and told you, I'm

9    sure, that you have a right to speak at this sentence

10   hearing and tell the court what you believe the

11   appropriate sentence should be.

12         You have a right to contest certain things in

13   the presentence investigation report, the right to send

14   letters in to the court, family members, et cetera, to

15   state what they believe your sentence should be.

16         Do you understand all of those rights?

17         THE DEFENDANT:  Yes, sure.

18         I do.

19         THE COURT:  Okay.

20         Prior to your sentence, I have reviewed a number

21   of items.  One has been the plea agreement and you pled

22   guilty to the count in the superseding indictment and that

23   was done more than two years ago you entered a guilty

24   plea.

25         At that time you indicated that between 1997 and

1    2001 you had agreed to possess cocaine and transport it to

2    the United States laundering --

3              THE DEFENDANT:  Yes.

4              THE COURT:  Millions of dollars and that amount

5    exceeded more than 5 kilograms.

6              At the time your plea was taken, there was no

7    entry, docket entry made at the request both of your

8    attorney and the US Attorney's Office in view of the

9    security issues that have arisen.

10             I have also reviewed the presentence

11   investigation report.  I have reviewed the recommendation

12   of the probation department which is confidential, but I

13   will disclose it in my discretion.

14             The recommendation of the probation department

15   is $25,000 in a fine payable or due immediately and

16   payable in six months of your sentence, 240 months in

17   custody, five years supervised release with the special

18   conditions that you comply with the fine payment schedule,

19   that you make full financial disclosure to the probation

20   department, that you not possess a firearm, ammunition or

21   destructive device, and that if you are deported that you

22   not illegally reenter the country, the United States.

23             A custodial sentence of the comments is

24   suggested of 240 months and that is viewed as appropriate

25   in meeting the need for punishment deterrence.  Although

1   this is below the low end of the advisory guideline range,

2   it is still substantial and appears appropriate for this

3   very serious, but nonviolent, first-time offense.

4           The defendant played a prominent role in a

5   Colombian drug cartel and is responsible for some 3,500

6   kilograms of cocaine.  As a lieutenant in the

7   organization, the defendant managed logistics for

8   international cocaine shipments and day-to-day operations.

9   The defendant, age 52, is a native of Colombia.  He's in

10  the United States pending sentence for the instant

11  charges.

12          The defendant and his numerous siblings were

13  raised by a farming couple under unremarkable

14  circumstances in Colombia.  He has been married twice, and

15  has four children, two of whom are minors.  The defendant

16  enjoys generally stable health, although he does suffer

17  from several conditions, such as hypertension and

18  gastritis, which are treated with medication.

19          And it goes on to note that a fine is

20  recommended because it is not known how much any profit

21  was realized from the defendant's participation in the

22  events.  Also he owns some property in Colombia on which

23  the fine amount is based, and is paying for his legal

24  representation.

25          Full financial disclosure is recommended to

7

1    assist the probation department in monitoring the payment

2    of the fine and to obtain a more complete financial

3    profile.

4              The defendant has a cooperation agreement with

5    the government.  However, the extent and significance of

6    his assistance is unknown to the probation department.  As

7    such, this factor has not been considered in formulating

8    the recommended sentence.

9              I also have reviewed the government's 5K1 motion

10   of September 29, 2009.  I reviewed Mr. Wikstrom's letter,

11   which is precise and to the point and very well written of

12   October 13, 2009.

13             Should I have anything else?

14             MS. KLAPPER:  Not from the government, your

15   Honor.

16             MR. WIKSTROM:  No, your Honor.

17             THE COURT:  Okay.

18             So essentially the defendant had currently time

19   spent in custody, he was arrested in Colombia back in --

20             MR. WIKSTROM:  December 27, 2004.

21             THE COURT:  Okay.

22             MR. WIKSTROM:  In two months, it will be a total

23   of five years.

24             THE COURT:  In your letter you do not object to

25   any of the calculations in the sentencing guidelines.

1          MR. WIKSTROM:  That's correct.

2          THE COURT:  Therefore, the court will accept the

3    guideline calculation and the contents of the presentence

4    report without any amendments.

5          The government is on board with that, correct?

6          MS. KLAPPER:  Yes, your Honor.

7          THE COURT:  All right.

8          So we have a 52 year old defendant with no prior

9    criminal history who happens to marry the sister of one of

10   the principals in this Norte Valey organization, and the

11   issue is based on what he's done cooperation wise and his

12   initial request to deal with this before he was arrested,

13   how much leniency should be shown to him.

14         What would you like to say, Mr. Wikstrom?

15         MR. WIKSTROM:  I want to thank the court for

16   reviewing the documents already submitted to it in

17   connection with sentence.

18         I know your Honor has presided over this case

19   for a number of years and has already imposed a number of

20   sentences on codefendants, and I don't think I would be

21   presumptuous in assuming that the court has an idea of

22   where it intends to sentence Mr. Florez Rios this morning.

23         And because of the court's familiarity, I don't

24   have to speak at great length, nor do I feel to write at

25   great length.  But there are a few points that I think

1    this morning deserve special emphasis.

2         I addressed in my letter the organizational role

3    enhancement.  But I also want to address weight, and I

4    didn't write about that.  But Mr. Florez Rios is at level

5    38 and there's a note that indicates that 3,500 kilos is

6    about 20 times higher than the 150 kilograms necessary to

7    reach the Section 2D stratosphere, the highest level.

8         And I think in terms of guidelines in the

9    United States, those guidelines make sense because if one

10   is a drug dealer in New York and has hundreds of kilos,

11   that denotes here a level of sophistication and long

12   experience, resources to purchase that kind of weight,

13   typically an organizational structure that is not

14   insignificant, a security apparatus and the like.  And all

15   of those things correlate with culpability.

16        Not so, however, your Honor, in the world that

17   Mr. Florez Rios inhabited, where the nation produces 6 to

18   800 tons, millions of pounds annually according to the

19   GAO, and it is a huge component of Colombia's gross

20   domestic product.  Mr. Florez Rios, simply by agreeing

21   with his brother-in-law to help him out in the business

22   came in at level 38, although his only experience

23   theretofore had been as a driver.

24        So I'm not quarrelling with the weight and I'm

25   not objecting to it, and it is a huge amount of drugs that

1    were imported by this cartel of which this defendant was

2    in management for a period of three years out of his 52.

3           There are in his case, your Honor, factors which

4    I think are unusual, maybe even unique.  He became middle

5    management by virtue of the marriage to Arcangel's sister.

6    Not because he worked his way through the system or

7    partnered up with people or eliminated competition or

8    cornered the market but he entered the level of the

9    business at that level by way of Arcangel's sister.

10          What struck me when I met the defendant and what

11   struck me today and what I hope strikes your Honor since

12   you have only seen this man twice over the last four years

13   is that he was out of the business for years before he was

14   indicted and before he was arrested.  And that is simply

15   not so with respect to many of his codefendants and many

16   of the typical drug defendants who come before this court,

17   all of whom, most of whom, your Honor, keep dealing until

18   the moment handcuffs are put on them and, in some cases,

19   even thereafter.

20          This defendant was, according to him, out of the

21   business and retired and according to Arcangel he was

22   fired.  But, in any event, he was out of the business no

23   later than 2002, and got arrested, as I said, in December

24   of 2004.

25          When I met Mr. Florez Rios five years ago, he

1    had made what struck me then and strikes me still today as

2    a very mature, adult, conscious decision to face the

3    music, to atone for his crimes and pay his debt to

4    society, hoping only to have the chance to reunite with

5    his family, and I must say there were about 20 people in

6    the room, including his wife and children, siblings,

7    cousins and the like.

8              Some of them are here today.  I note for the

9    record the presence of Julia Henao and Stella Henao,

10   Mr. Florez Rios's wife, who I described in my letter,

11   seated in the front row and the defendant's mother-in-law,

12   who is seated to Stella's left.

13             At no time has this defendant discussed these

14   events which I commonly hear, and I imagine the court does

15   too, rationalizations, minimizations, the dash for the

16   privity of a conspiracy, the kind of self-justifying

17   minimization that is common.

18             He's never whined about the conditions while

19   incarcerated, a common thing I'm sure the court has heard

20   about in connection with people's sentences.  He is candid

21   to a fault, and responsible and mature.  He's not school

22   smart, but he is a very wise 52 year old man who loves his

23   family very much, and decided to reach out to the

24   government to seek the cooperation agreement, to seek to

25   surrender to United States custody at a time when he was

1    still hiding.

2         Unlike many of the people whom you have

3    sentenced or will sentence here who took off for Venezuela

4    or Cuba or continue to deal in 2003, and 2004, and even

5    later.

6         The court has imposed a couple of other

7    sentences that I think are relevant.  I know that

8    Mr. Sabogal was sentenced to six years in custody, and he

9    was the right-hand man of a much more significant player,

10   much more weight, multiples of the weight of this

11   defendant, and who was in the business for a longer period

12   of time.

13        I know that Mr. Rendon was sentenced to about

14   seven years or six and a half, also in business for a

15   longer period of time and this defendant, your Honor, was

16   the first to sign a cooperation agreement with the

17   government.  And that is a fact that is, in my view, not

18   insignificant.

19        Many people decide to cooperate when they know

20   that they are getting the water from the cooperation of

21   others and as I put in my letter, this defendant was the

22   first to execute a cooperation agreement with the

23   government and that is a meaningful fact and one that only

24   he can make.

25        I note the presence of a case agent, Romedio

1   Viola who I want to thank for his efforts and his kind

2   courtesy to this defendant and his professionalism

3   throughout.

4          Out of his 52 years on this earth, your Honor,

5   Mr. Florez Rios strayed for three of them.  He grew up a

6   farmer.  He had returned to farming and lived modestly

7   with his family and it is that life to which I hope in the

8   near future he can return, and I ask you, under all of

9   these circumstances, to be as gentle with him as you can.

10          And I know that the defendant, himself, wants to

11   address the court and would like to give him a chance to

12   do that now.

13          THE COURT:  If you would, Mr. Florez.  Excuse

14   me, Mr. Florez.

15          Just let the translator tell us what you are

16   saying in English, please.

17          THE DEFENDANT:  There are many people to whom I

18   owe apologies for my crimes.

19          First, I want to apologize to my wife and to my

20   children to whom I caused so much harm on these last five

21   years.  I also want to beg the forgiveness of the court

22   and of the government.  I know that I was in the wrong

23   business when I got involved and I want this judge to know

24   that when I left it to go back to being a farmer, I did so

25   with a sense of relief.

14

1              I want to thank Mrs. Clapper and the agent

2    Romedio Viola who have been only professional and too kind

3    and who have given me an opportunity these last few years

4    to rectify my misdeeds from previous years.

5              I want your Honor to know that I had already

6    returned to a simple life, that I was working honestly,

7    that I was taking care of my wife and children, and that

8    it is to that life that I will return.

9              This judge should never fear that I will be

10   breaking the laws again, and, finally, I want to thank

11   your Honor for your patience and for your consideration.

12             THE COURT:  Ms. Klapper, is there anything the

13   government wants to add?

14             MS. KLAPPER:  Your Honor, I do believe that

15   Mr. Wikstrom did an excellent job, and I stand by

16   everything in the government's 5K.

17             There was one factual inaccuracy in

18   Mr. Wikstrom's presentation which was he said to your

19   Honor please consider that Mr. Florez has only been

20   involved for three years and, in fact, at a much, much

21   lower level he was involved --

22             THE COURT:  He was a cook for a couple years and

23   a driver.

24             MS. KLAPPER:  Yes, your Honor, and a driver for

25   Arcangel.

1          I do think, your Honor, the fact that Mr. Rios

2    pleaded quickly and cooperated quickly did send a message

3    to the defendants who were thereafter expedited that this

4    was the path to take, and I think that helped the

5    government in all of its subsequent negotiations with

6    other codefendants.

7          Other than that, your Honor, I can say

8    personally, Agent Viola and I have always found the

9    defendant to be completely credible and only disappointed

10   that he didn't have more information to provide to the

11   government.

12         THE COURT:  Well, I remember when this plea was

13   taken I made some notations that at that time the docket

14   entry was not made based upon the fact that the government

15   had information that a group of lawyers had been retained

16   to check docket entries and threaten family members.

17         So based upon that representation, and the

18   representation that there were at least three fugitives

19   that the government was interested in, and I wrote their

20   names down, and I note that at least one of them is

21   currently or has been apprehended and the other

22   information that the defendant provided to the government.

23         With respect to counsel's comment, Ms. Klapper,

24   on the defendant's position in the particular Arcangel

25   arm, if you will, or organization as compared to some of

1    the others, Mr. Bustamente and a variety of other ones,

2    would you say it was on a similar par of Mr. Rendon who

3    received seven years?

4              Or was the defendant's involvement more intense?

5    Because he did do a lot.  He made all the arrangements, a

6    lot of cocaine to be shipped into the United States.

7              MS. KLAPPER:  I would say his position was

8    analogous to the position Sabogal occupied with

9    Bustamente.

10             The organization was smaller.

11             THE COURT:  The organization of this defendant

12   was smaller.

13             MS. KLAPPER:  Yes, your Honor.

14             THE COURT:  Substantially smaller, fair to say?

15             MS. KLAPPER:  For the three years in which he

16   was involved, it was substantially smaller.  Let me say

17   that.

18             THE COURT:  Okay.

19             MS. KLAPPER:  And less sophisticated.

20   Bustamente's part of the organization was far more

21   sophisticated, far more regular.

22             As a result, this defendant had less to do, but

23   his role was similar to that of Sabogal, though for far

24   fewer years.

25             THE COURT:  And Mr. Sabogal received a sentence

1    of?

2         MS. KLAPPER:  Your Honor, you sentenced him to

3    six months -- excuse me -- six years, almost exclusively

4    because of the cooperation leading to the apprehension of

5    the fugitive who we discussed at sidebar.

6         And also he was similarly situated to this

7    defendant in that both were in the process of arranging

8    surrenders when they were apprehended.

9         THE COURT:  That was my recollection also.

10        The other remaining question I had,

11   Mr. Wikstrom, has to do with the defendant's assets.

12   There is no financial statement submitted with respect to

13   any possible fine or whether or not these farms were

14   purchased with proceeds of his earnings from his

15   involvement in the crime, I can't say.

16        Do you have any further information on that?  If

17   not, I'll be inclined to accept the information or the

18   recommendation, rather, of the probation department.

19        MR. WIKSTROM:  I don't know, your Honor, frankly

20   why the financial statement was not submitted, and I

21   apologize to the court.

22        If you feel it appropriate to adjourn so that

23   one can be prepared, I'm happy to accommodate the court.

24   Probation recommends that the defendant is able to pay a

25   fine.

1              I don't have any reason to doubt that, frankly.

2              THE COURT:  And that's based on his assets in

3      Colombia.

4              MR. WIKSTROM:  Your Honor, and I have no doubt

5      that I think this defendant would be the first to admit

6      that to the extent he had earnings from this business,

7      that they were used to purchase the farm he retired to.

8              So I don't think he would claim poverty or an

9      inability to pay a fine.

10             THE COURT:  And I note that family members are

11     here today.

12             MR. WIKSTROM:  They are.

13             THE COURT:  They were able to afford to come to

14     the United States.

15             MR. WIKSTROM:  And to retain counsel, and they

16     have come, from time to time, to visit him.

17             So they are a family that has some resources.

18     The precise number, I don't know, and I'm happy to

19     accommodate the court, should you wish, and prepare a

20     financial statement.  But I would not challenge the

21     assertion that he's able to pay a fine.

22             THE COURT:  Thank you.

23             So essentially the defendant has in terms of

24     credit, jail time credit here in the United States, it's

25     substantially less than the five years because he spent

1    how much time in Combita?

2          MS. KLAPPER:  The Bureau of Prisons will credit

3    him fully for the time he spent in Colombia.

4          The almost five years will be credited fully to

5    whatever sentence your Honor imposes.

6          THE COURT:  If I were to incorporate obviously

7    the level 39, I'm going to reduce substantially based on

8    his cooperation and his desire to surrender in advance of

9    his arrest, and the fact that he had returned to a

10   law-abiding life, apparently, prior to his apprehension.

11         And his rather unique position of being the

12   brother-in-law of the head of the organization.  I would

13   be looking to sentence the defendant to a term of 66

14   months, which would enable him to be released at this

15   point in time, I would think because he has almost five

16   years in, and he would get some good time credit.

17         MR. WIKSTROM:  I believe that that would be the

18   same as a time served sentence.

19         He has served 58 months and on 66 I believe the

20   good time is roughly nine months.  So he would have done

21   it all.

22         THE COURT:  And I do this based fully on the

23   fact that this defendant, along with at least one other

24   defendant in the more massive organization, has

25   demonstrated that he understands the seriousness of this

1   offense.

2          He is a first-time offender.  He has his family

3   support here.  He removed himself from the criminal life

4   prior to the apprehension.  I think that the punishment

5   has been sufficient.  It bodes well that the defendant has

6   not tried in any way to minimize his involvement, nor

7   sought sympathy for his conditions of confinement.

8          I believe that he has an excellent chance at

9   rehabilitation because there's no way he can get himself

10  involved again in any kind of drug trafficking.  So it

11  would meet all the requirements of 3553.

12         And I impose a sentence of a fine of $25,000,

13  which is due immediately and payable within six months of

14  the sentence, the 66 months in custody, five years

15  supervised release with the conditions that I previously

16  noted, and a $100 special assessment and, of course, the

17  defendant is prohibited from possessing any firearms.

18         MR. WIKSTROM:  Thank you, your Honor.

19         May I ask the court for -- to place in the

20  judgment and commitment form two recommendations, and this

21  may be redundant in light of Ms. Klapper's remark.

22         But I would like the court to recommend that

23  under 3585, Mr. Florez Rios receive credit for the time

24  spent between 12/27, 2004 and I believe it's July 31st of

25  2006 as time spent in custody on these charges which was

1    not credited toward any other sentence or pending charge?

2         And that may happen automatically in light of

3    what Ms. Klapper said.

4         THE COURT:  Let's make sure.

5         MR. WIKSTROM:  I would like to make sure there

6    is something in the court's order that I could point to

7    should it become an issue.

8         THE COURT:  Okay.

9         MR. WIKSTROM:  And I would also ask the court to

10   recommend that Mr. Florez Rios be repatriated as swiftly

11   as possible within the ICE system so that he doesn't

12   languish several more months awaiting flight.

13        MS. KLAPPER:  Your Honor, just to be clear, my

14   records show that Mr. Dagoberto Florez Rios was arrested

15   on December 27, 2004 and extradited on August 31, 2006.

16        MR. WIKSTROM:  Thank you.

17        MS. KLAPPER:  I'm sure he knows best.

18        Maybe you want to double-check with Mr. Florez

19   Rios so that your J&C is accurate.

20        MR. WIKSTROM:  August 30th.

21        MS. KLAPPER:  August 30th, your Honor.

22        THE COURT:  August 30th it is.

23        And I'll make the recommendation that he be

24   repatriated as quickly as possible by ICE.

25        MR. WIKSTROM:  Finally, your Honor, in light of

1    the representations I would ask that the transcript of

2    this proceeding be sealed.

3              MS. KLAPPER:  Your Honor, what I would like to

4    say is that we have no objection to the sealing of the

5    actual transcript.

6              But we would ask that all of the proceedings

7    previous to today's date and today's date be docketed.

8              MR. WIKSTROM:  Of course.

9              THE COURT:  It has to be docketed.

10             MR. WIKSTROM:  Absolutely, your Honor.

11             THE COURT:  So I will seal based on the

12   statements involving his cooperation that are in this

13   transcript.

14             I will seal the record on that and the entry,

15   the docket entries as to what his sentence is and the

16   prior guilty plea will be made.

17             MR. WIKSTROM:  Thank you.

18             THE COURT:  Thank you.

19             The defendant is advised that any appeal he

20   seeks must be filed within ten days of today, and he must

21   file a notice of appeal with the Second Circuit.  If funds

22   cannot be found or are not available to him to pay

23   counsel, counsel can be appointed.

24             Is your client seeking to appeal?

25             MR. WIKSTROM:  He will not appeal, your Honor.

1              THE COURT:  Okay.

2              MS. KLAPPER:  Your Honor, at this time the

3      government moves to dismiss the second, fourth, fifth,

4      seventh, eighth, and ninth superseding indictments and

5      counts two, three, nine, 17, 21 and 22 of the third

6      superseding indictment in the interests of justice.

7              THE COURT:  That application is granted.

8              MR. WIKSTROM:  Thank you.

9              MS. KLAPPER:  Thank you, your Honor.

10             THE COURT:  That completes the proceeding.

11             Have a good day.

12             (Matter concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25